UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Case Nos. | 1:15-cv-10050-NMG |
| ) | | 1:15-cv-10452-NMG |
| DANIEL THIBEAULT ) | | |
| GL CAPITAL PARTNERS, LLC ) | | |
| GL INVESTMENT SERVICES, LLC ) | | |
| GRADUATE LEVERAGE, LLC (d/b/a GL ) | | |
|   ADVISOR and GL HOLDINGS CORP.) ) | | |
| TAFT FINANCIAL SERVICES, LLC, ) | | |
| ) | | |
| Defendants, ) | | |
| and ) | | |
| ) | | |
| SHAWNET THIBEAULT ) | | |
| GL ADVISOR SOLUTIONS, INC. ) | | |
| ) | | |
| Relief Defendants. ) | | |

**PLAINTIFF'S OPPOSITION TO RELEASE OF FUNDS
FROM BANK OF AMERICA RE: EMPLOYEE STATUS REPORT**

On December 12, 2016, this Court ordered Plaintiff Securities and Exchange Commission ("Commission") to file an opposition to the release of approximately $248,000 held by the Bank of America to the Employee Plaintiffs in *Jalbert v. Graduate Leverage and Daniel Thibeault*, 15-cv-10452. The Commission opposes the release of these funds to the Employee Plaintiffs and here responds to the request for these funds in the Employee Plaintiff's August Status Report (15-cv-10452, Dkt. No. 36). The funds held by Bank of America ("Bank") in Defendants' names should be preserved for distribution to the investor victims, through the criminal restitution process and through disgorgement in this civil action. This money— investors' money embezzled by Defendants—should not be distributed to employees who

purport to have worked after the asset freeze was imposed.  The Commission respectfully requests that this Court a) deny the Employee Plaintiffs' request to receive this money, and b) order Bank of America to comply with seizure warrants issued by the United States Attorney's Office and to release whatever frozen funds remain to the Commission or the United States Attorney's Office to distribute to the harmed investors.

This matter was also briefed by the Commission (Dkt. No. 176) in response to Bank of America's pending Motion for Instructions (Dkt. No. 164).  At that time, the United States Department of Justice also sought leave of this Court to intervene and file an opposition to the release of the Bank of America funds to the Employee Plaintiffs (Dkt. No. 175).  The Employee Plaintiffs also submitted a proposed briefing schedule at that time (Dkt. No. 165), but do not appear to have filed a response to the Motion for Instructions.

## PROCEDURAL HISTORY

This Court froze Defendants' assets on January 21, 2015 (Preliminary Injunction, Order Freezing Assets, and Order as to Other Injunctive Relief, Dkt. No. 31, "Asset Freeze").  A few weeks later, some GL-entity employees ("Employees") asked to modify the asset freeze to pay their claims for wages, commissions, and vacation time. Dkt. No. 41.  The Court denied that motion without prejudice.  Dkt. No. 51.

On February 5, 2016, on the Employees' motion, the Court temporarily lifted the freeze of the funds at the Bank, but reinstated the freeze three weeks later on motions for reconsideration from the Commission and from the U.S. Attorney's Office.  Dkt. Nos. 114 & 125.  The Court stated that the disposition of the frozen funds would be "subject to further consideration after final resolution of the related criminal proceeding." Dkt. No. 125.  In the criminal case, the court has recently issued a preliminary order of forfeiture that includes

accounts at the Bank in the names of the Defendants.  In this proceeding, judgment has been entered against Thibeault (including a $15 million disgorgement order), and the Commission has requested default judgments against the other defendants (with similar disgorgement amounts).

Ignoring this Court's order that the disposition of the frozen funds would be considered later and without notice to the parties here, Employees' counsel filed, in Massachusetts state court, a Motion to Charge the Bank on its Trustee Answer on July 11, 2016.  This motion attempted to get the Massachusetts Superior Court to force the Bank to pay to Employees' counsel the funds it held pursuant to this Court's Asset Freeze.  When, in compliance with this Court's Asset Freeze, the Bank did not relinquish the frozen funds, Employees' counsel moved to have the Bank held in contempt.

On September 19, 2016, at a hearing in the Middlesex Superior Court trustee process matter attended by counsel for the Commission and the U.S. Attorney's Office, Employees' counsel withdrew his contempt motion and the Superior Court judge (the Honorable Peter Krupp) vacated the order that allowed the Employees to charge the trustee Bank.  The Commission was permitted to intervene in the state court matter and, on November 8, asked the state court to stay the Employees' trustee process action until this Court has determined the disposition of the assets, arguing that this Court was the proper tribunal to consider the disposition of the assets frozen by the Asset Freeze.  The state court granted that stay, over the Employees' opposition, on December 5, 2016.  A week later, this Court ordered the Commission to file this opposition.

### INACCURACIES IN EMPLOYEE PLAINTIFFS' STATUS REPORT

The Employee Plaintiffs claim in their status report that "the defendants and the SEC reached an Agreement for Judgment that did not include any injunctive relief."  Dkt. No. 36.

This assertion is wrong in at least two ways. First, the SEC has only reached a resolution with Defendant Daniel Thibeault, following his guilty plea. *See* Final Judgment, Dkt. No. 173.[1] The Commission has moved for default judgments against the entity defendants (Dkt. Nos. 167-172), but the Court has not yet ruled on those motions. Second, the judgment against Thibeault and the proposed judgments against the Entity Defendants contain injunctive relief. In fact, injunctive relief is the first three sections of each of those judgments. Thus, contrary to the Employees' contention, the case has not fully resolved, it has not resolved without injunctive relief, and the Employees are not entitled to collect the funds taken from—and rightfully belonging to—the Defendants' victims.

## ARGUMENT

The proper disposition of the funds held at the Bank (as well as the other frozen funds) is a *pro rata* distribution to the victim investors by the U.S. Attorney's Office and the Commission,[2] because:

A. The Court may apply equitable principles to distribute the frozen funds, and is not bound by priority lien law;

B. Many of the Employees are claiming money for work they did in violation of this Court's Asset Freeze order;

C. The Employees are attempting to take funds that are subject to a forfeiture order in the criminal case; and,

D. There appears to be multiple legal problems with the Employees' claims that should have been presented to this Court by Employees' counsel before requesting default judgments.

---

[1] Employee Plaintiffs' Status Report was also false when filed, as this Court had not yet issued final judgment against Thibeault when that status report was filed.

[2] As previously briefed to this Court, *see* Dkt. No. 98, the Commission believes that payments via the Fund's trustees would be an efficient way to distribute funds to harmed investors. The Commission believes that money collected in the criminal case is being distributed in this manner.

4

The Employees are attempting to take money that they do not have a right to; the frozen funds were misappropriated from investors, and those investors should get that money back.

### A. Equitable Principles Control the Distribution of the Frozen Funds, Not "First In Time" Priority Principles.

The Employees have argued they "have priority over the Fund's and the SEC's unperfected and unsecured claims to these assets." Dkt. No. 103, p. 1.[3] They cite their November 2015 judgment lien, obtained following this Court's default judgment in August 2015, and assert that the principle of "first in time, first in right" means they get their money first. Not so. The Employees incorrectly rely on the "first in time" principle here, when applicable case law demonstrates that equitable principles control.

Courts generally do not apply priority principles when assets have been obtained fraudulently and then frozen for victims. In *U.S. v. Benitez*, 779 F.2d 135, 139-40 (2d Cir. 1985), certain victims of a fraudulent scheme obtained a state court judgment, becoming judgment creditors. Then they claimed they had priority over non-judgment-creditor victims. The Second Circuit rejected this argument (under both state law and federal common law) and affirmed a distribution *pro rata* to all the victims. *Id.*; *see also SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80, 88 (2d Cir. 2002) (finding even a constructive trust would not defeat "the equitable authority of the District Court to treat all the fraud victims alike ... and order a *pro rata* distribution."); *Ruddle v. Moore*, 411 F.2d 718, 718 (D.C. Cir. 1969) (distribution of funds recovered from confidence man should be distributed *pro rata*, without regard to when each victim's claim accrued).

---

[3] Memo. of Intervening Employees in Opposition to GL Beyond Income Fund's Motion to Modify the Court's Asset Freeze Order and Cross-Motion to Modify the Court's Asset Freeze and Distribute Assets.

Similarly, in *U.S. Commodity Futures Trading Comm'n v. Efrosman*, 2009 WL 2958389 (S.D.N.Y. 2009), certain defrauded victims obtained a separate judgment against the defendant and argued they had a superior claim to the funds the court had ordered distributed *pro rata* to all the defendants' victims. *Id.* at *1. The Court rejected this argument and stated that "the law of priority is not the appropriate mechanism for determining what relief should be awarded in the instant case. The CFTC brought this suit in equity, not in law, seeking restitution, not damages. As an equitable remedy, restitution is awarded based on equitable considerations, not legal technicalities." *Id.* at *7. The Court concluded that it would have been inequitable to give the judgment creditor victims priority to the funds reserved for all victims. *Id.* at *9.

While the cases cited above are from the Second Circuit, Massachusetts courts apply the same principles. The Supreme Judicial Court addressed a lien priority versus equity decision in *Mickelson v. Barnet*, 390 Mass. 786 (1984). The SJC weighed the claims of victims of an embezzlement against a tax lien held by the United States. The Court held (as a matter of Massachusetts law) that the "victims of the embezzlement are entitled to the assets" which were held in constructive trust by the embezzler, over the tax claim of the United States arising out of litigation with the defendant. *Id.* at 798.[4]

Strong logic underpins this principle. When money is misappropriated from victims by a person in a position of trust, a "constructive trust" is created.[5] *Id.* at 790. The misappropriated money, after all, does not belong to the embezzler. "[B]y seeking to execute" against the assets frozen by this Court in this SEC injunctive action, the Employees "assume those assets belong to Defendants. In truth, however, the assets rightfully belong to investors. Of course, [the

---

[4] The Court was careful to point out that it was not interpreting federal priority law.

[5] A "constructive trust may be said to be a device employed in equity, in the absence of any intention by the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained … in violation of a fiduciary relation …." *Foster v. Hurley*, 444 Mass. 157, 167-68 (2005).

6

Employees] cannot satisfy their judgment with other investor's money." *SEC v. Amerindo Investment Advisors, Inc.*, 2014 WL 2112032,*16 (S.D.N.Y. May 6, 2014); *see also Rafkind v. Chase Manhattan Bank, N.A.*, 1992 WL 380291 (S.D.N.Y, Dec. 7, 1992) (applying same principle to Commission-requested asset freeze). The Employees want to pay their wage claims with investors' money. That desire conflicts with the equitable protection of these assets for their rightful owners.

### B. At Least Some of the Employees Violated This Court's Order by Continuing to Work; They Should Not Be Rewarded for It.

Some of the Employees' claims to wages stem from their violation of the Asset Freeze order entered on January 21, 2015. Section IV of the Order prohibits the "GL Entity Defendants and … their employees … from taking any actions to pay … [or] encumber … the value in any way … [of] any funds and other assets of the GL Entity Defendants or Thibeault…." Dkt. No. 31. The Employees allege that the Defendants did not pay them for the pay period starting January 26, 2015 and ending February 6, 2015, entirely after the asset freeze was entered. *See* Employees' Complaint,[6] ¶ 11 ("On February 6, 2015, the Defendants did not pay any of its [sic] employees"); Affidavit of Jennifer Jalbert, Dkt. No. 41-1, ¶ 8 (claim for bi-weekly salary on pay period ending Feb. 6, 2015). At this time, the Employees had known for almost **two months** of the civil and criminal actions against Thibeault and the GL Entities. *See* Employees' Complaint, ¶ 9 (detailing December 10, 2014 shuttering of GL operations after the FBI raided GL and the SEC filed suit). In fact, some Employees assert that they continued to work until late February or even March 2015. Employee Macielak claimed through February 20, Raymond through

---

[6] *Jalbert v. Graduate Leverage and Daniel Thibeault*, Civ. Action No. 15-cv-10452, Complaint, Dkt. #1.

March 3, and Krebs through March 9. *Jalbert*, Dkt. Nos. 23-3, -4, and -5.[7] They apparently did so even though a) this Court had already considered a contempt motion related to employees continuing to work and b) GL operations were shut down.

In other words, on January 21, 2015, the Employees were ordered by this Court not to do anything to encumber GL assets. And GL and its subsidiaries were enjoined by this Court from paying for any employee work. But the Employees worked anyway, in violation of the Asset Freeze order.

"Under some circumstances… equitable principles can weigh in favor of awarding priority to certain victims over others. These circumstances usually involve particularly meritorious behavior on the part of the victim awarded priority and/or particularly unmeritorious behavior on the part of the other victims." *Efrosman*, 2009 WL 2958389, at *8. Thus, the Court can and should consider the Employees' violation of the Asset Freeze order when determining that they are not entitled to share in the allocation of the frozen assets.

C. **The Claimed Assets Are Subject to a Forfeiture Order in the Parallel Criminal Proceeding and Should be Transferred to the United States.**

On September 29, 2016, the Honorable Judge Leo Sorokin entered a preliminary order of forfeiture in the criminal action, *United States v. Daniel Thibeault*, Crim. No. 15-10031-LTS, Dkt. No. 138, which involves conduct overlapping with the misconduct in this case. That order

---

[7] One employee claimant, Ryan McDonnell, appears to have claimed wrongful termination (not unpaid wages) with a last day of work of November 5, 2012 (more than two years before this case was filed) and claimed that he was in settlement negotiations when the freeze occurred. Another, Mark Turner, claimed that his last day of work was "Present." It is unclear whether Employees' counsel included these individuals' claims in his damages calculations. Under no circumstances should these claims be paid with the investors' stolen funds.

forfeited funds in accounts at the Bank in the names of either Thibeault or the GL entities,[8] and authorized the Marshalls Service to seize those funds.[9]

Sections IV.C and V.C of this Court's Asset Freeze state that the freeze shall cease to apply to any asset "which becomes subject to any later order entered by any federal court as a result of proceedings which may be filed by the United States … under any federal or criminal forfeiture statute, to the extent such later order requires transfer of any asset to the United States government." In other words, the Asset Freeze order provides for the release of frozen funds to the United States upon a forfeiture order requiring transfer of funds to the United States. Judge Sorokin's order does so. Thus, frozen funds subject to the order of forfeiture should be released to the United States Attorney's Office. If the Employees wish to assert a right to these funds, the preliminary order of forfeiture provides a mechanism for them to do so, in subsequent forfeiture proceedings.

### D. The Employees' Wage Claims Appear to Have Multiple Legal Problems that Employees' Counsel Should Have Presented to this Court.

Count 1 of the Employees' Complaint claims a violation of 29 U.S.C. § 206, part of the Fair Labor Standards Act ("FLSA"). Section 206 guarantees the right to be paid a minimum wage and—under certain circumstances—employees can sue to recover for these unpaid or underpaid wages. The Employees' Complaint asserts this right to be paid.

But the Employees' Complaint and subsequent filings ignore the exemptions to the FLSA codified at 29 U.S.C. § 213, which appear to apply to the claimant employees. Section 213 states that Section 206 shall not apply to employees who are "employed in a bona fide executive,

---

[8] Accounts ending in 6845, 0394, 2409, 2130, 3583, and 3639.

[9] The United States Attorney's Office has published notice of the forfeiture order. That notice period will expire on January 21, 2017.

administrative, or professional capacity… or in the capacity of outside salesman." The disqualifying exception applies if the employee:

> a) was compensated more than $455 per week on a salary basis [29 C.F.R. § 541.600(b)];
>
> b) had primary duties performing office work directly related to the management or general business operations of the defendants (including in tax, finance, accounting, budgeting, advertising, marketing, personnel management, human resources, computer work, or legal and regulatory compliance) [29 C.F.R. § 541.201(b)]; and,
>
> c) exercised discretion and independent judgment with respect to matters of significance (including as factors to consider whether the employee is engaged in, for instance, interpreting and implementing management policies or operating practices, carrying out major assignments in conducting the operations of the business, investigating and resolving matters of significance on behalf of management, or representing the company in handling complaints or resolving grievances) [*Id.*].

29 C.F.R. § 541.203, entitled "Administrative exemption examples," states "Employees in the financial services industry generally meet the duties requirements of the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments, or debts … and marketing, servicing or promoting the employer's financial products." Human resources managers and purchasing agents are also generally exempt from claiming FLSA minimum wage violations. *Id.*

Yet Employees' counsel has raised none of these issues nor made any showing that the plaintiffs are not exempted from an FLSA claim. To the contrary, the Employees' Complaint states that the named plaintiff made more than $455 per week and worked as a "mortgage services manager" (which would logically include office work relating to general business operations and the exercise of discretion and independent judgment in the collection and analyzing of customers' income, assets, and debt information). Thus, the Employees' pleadings indicate that the lead plaintiff might fall under the FLSA's administrative employee exemption.

Other class plaintiffs might also fall into either this or the executive employee exemptions, including:

- GL's General Counsel (who exceeded the pay maximum, and appears to fall under the Executive Employee exemption to the FLSA, 29 C.F.R. § 541.100 et seq., which includes "monitoring or implementing legal compliance measures," *id.* at § 541.102);

- An employee claiming reimbursement in excess of the exemption maximum for "time spent engaging/explaining new predictive analytics software to clients" which resembles the exempted "marketing, servicing or promoting the employer's financial products."

- Other employees with bi-weekly earnings in excess of the maximum and titles such as "Account Management," "Loan Servicing Manager," and "Client Outreach."

In short, the Employees' FLSA claims may have substantial problems. Employees' counsel knew or should have known that some employee claimants, including the Employees' named class representative, may not be eligible to bring an FLSA claim. But he failed to bring this to the Court's attention.

Nor are the problems with the Employees' claims cured merely by dropping the FLSA claim and proceeding with their other claims. Doing so could create a jurisdiction issue. The Employees claimed federal jurisdiction through 28 U.S.C. § 1331 (federal subject-matter jurisdiction). If the named class representative (and several others in the class) are exempt from bringing this claim, this Court would have discretion over whether to have retained jurisdiction. *See Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." (citing 29 U.S.C. § 1367(c)).

The Employees' second count also seems to be flawed. Count Two alleges violations of the Massachusetts Wage Act, Mass. Gen. Laws c. 149, §148. In this count, the Employees claim unpaid wages, commissions, reimbursable expenses, and vacation pay. But the Employees appear to have missed an important hurdle for making a Massachusetts Wage Act claim. Mass.

Gen. Laws c. 149, § 150 (which is the basis of Employees' claim to three times unpaid compensation, plus costs and legal fees) states: "An employee claiming to be aggrieved by a violation of sections … 148 … may, **90 days after the filing of a complaint with the attorney general**, or sooner if the attorney general assents in writing, … institute and prosecute … a civil action…." It is not clear whether Employees' counsel ever made the required complaint to the Attorney General's office, but it is clear that the Employees' Complaint was filed on February 19, 2015, well before the 90-day attorney-general waiting period had expired. The Employees do not appear to have pursued and exhausted the administrative remedy that would give rise to a private right of action under Section 150. Again, this failure to properly pursue and present their claim argues against distributing the victim investors' money to pay the Employees' wages, commissions, and vacation time.

## CONCLUSION

For the reasons set forth above, the Commission respectfully a requests that this Court a) deny the Employee Plaintiffs' request to receive this money, and b) order Bank of America to comply with seizure warrants issued by the United States Attorney's Office and to release whatever frozen funds remain to the Commission or the United States Attorney's Office to distribute to the harmed investors.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION
By its attorneys,

/s/ Marc J. Jones
Marc J. Jones (Mass. Bar No. 645910)
   Senior Trial Counsel
Kathleen Shields (Mass. Bar No. 637438)
   Senior Trial Counsel
Rebecca Israel
   Senior Investigations Counsel
Martin F. Healey (Mass. Bar No. 227550)
   Regional Trial Counsel

DATED: December 21, 2016

## CERTFICATE OF SERVICE

I hereby certify that, on December 21, 2016, a true and correct copy of the foregoing document was filed through the Court's CM/ECF system, and accordingly, the document will be sent electronically to all participants registered to receive electronic notice in this case. A copy will also be sent via first class mail to those parties who have not yet registered for notice via the Court's CM/ECF system.

/s/ Marc J. Jones
Marc J. Jones